## In re MARCUS et al.

### No. 11456.

District Court, W. D. Pennsylvania.

Nov. 17, 1932.

See, also (D. C.) 32 F.(2d) 719.

Baker & Watts, of Pittsburgh, Pa., for excepting creditors.

Lewis M. Alpern, of Pittsburgh, Pa., for Pennsylvania Trust Co.

Watson B. Adair, of Pittsburgh, Pa., referee.

SCHOONMAKER, District Judge.

The Pennsylvania Trust Company filed its first and final account as receiver in bankruptcy in the case of Marcus Brothers, bankrupts, on January 20, 1930, showing a balance due the accountant of $13,543.87. This account came up for audit and exception before Watson B. Adair, referee in bankruptcy. Exceptions were filed thereto by certain creditors. A hearing was had before the referee, with the result that on April 20, 1932, the referee sustained exceptions numbered 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21,

22, and 24, and dismissed the balance of the exceptions. The result of sustaining the exceptions above noted was the surcharging against the receiver the sum of $70,549.03, computed as follows:

By reason of exceptions 10 and 24.......... $62,879.11
By reason of exceptions 12 to 20, incl....... 5,620.00
By reason of exception 21..................... 70.00
By reason of exception 22..................... 199.48
By reason of exception 24 in addition to
  amount shown in respect to exception 10  15,449.56

Total Surcharges ........................... $84,218.15
From which the Referee deducted the balance due the Receiver, as shown in its account filed ............................... 13,669.12

Leaving the total amount of the surcharge of ......................................... $70,549.03

This order then came up before the court on certificate of review on the petition of the receiver.

The exceptions sustained by the referee may be classed and discussed in four groups as follows:

Group 1. Exceptions 10 and 24, which charge the receiver with negligence in the administration of the trust estate.

Group 2. Exceptions 12 to 20, inclusive, to the allowance of credits claimed by the receiver in the aggregate sum of $5,620 for the services and expenses of a detective agency employed by the receiver in an attempt to discover the persons involved in an alleged theft of trust assets.

Group 3. Exception 21, to failure of the receiver to account for $70 in deposits made with public utility companies as security for services.

Group 4. Exception 22 to a credit of $199.48 claimed by the receiver as a disbursement expense of its employee H. H. Bradford, during the months of November and December, 1924, and the months of January and February, 1925.

Was the referee right in sustaining these exceptions?

As to the first group of exceptions, the answer depends upon whether the receiver is properly chargeable with such neglect of duty as to be responsible for losses from theft of a part of the trust estate and losses accruing in the operation of the business.

We take it to be elementary law that a receiver will not be personally liable for losses sustained in the administration of an estate where he exercises good faith and ordinary care and prudence; nor will he be held liable for losses resulting by reason of the negligence of his employees without personal fault on his part in matters necessari-

ly or properly committed to them in the management of the trust property. Perry on Trusts (7th Ed.) vol. 1, §§ 409, 441; Clark on Receivers (2d Ed.) vol. 1, § 393 (a).

The Pennsylvania courts, I believe, lay down the correct rule, i. e., that a receiver is liable to surcharge only when guilty of fraud or supine negligence equivalent to fraud. See Springer's Estate, 51 Pa. 342, 344, 345; Darlington's Estate, 245 Pa. 212, 91 A. 486; Bender's Estate, 278 Pa. 199, 122 A. 283; Kline's Estate, 280 Pa. 41, 124 A. 280, 32 A. L. R. 926.

As we look over the proofs in this case, we can find no acts of the receiver which should convict it of such negligence as would justify the sustaining of these two exceptions to its account. There is no material dispute over the facts in this case. They may be briefly stated as follows:

Marcus Brothers were wholesale and retail grocers in Pittsburgh, with two stores; one at 1907 Penn avenue, and the other at 1711 Penn avenue. They did a large wholesale and retail business and had from twenty-five to thirty employees.

On May 7, 1924, an involuntary petition in bankruptcy was filed against the firm, and along with this petition there was also presented a petition for the appointment of receivers to take charge of the business and run it, pending the adjudications in bankruptcy. Gordon, Smith, Buchanan, and Scott were the attorneys for the petitioning creditors, and were represented by their associate counsel, Frank G. Ingersoll, in this proceeding. On these petitions being filed, this court appointed the Pennsylvania Trust Company of Pittsburgh, Pa., as receiver, and authorized the receiver to continue the business of the firm. In this case, the counsel for the petitioning creditors, Frank G. Ingersoll, advised the receiver to continue the employment of Marcus Brothers and their regular employees in carrying on the business in view of the fact that an offer of composition from the alleged bankrupts was in prospect. Such employment of the bankrupts in running a business by a receiver was the usual and ordinary course of procedure in bankruptcy cases in this district. At the time Ingersoll made this suggestion of the employment of Marcus Brothers, he had in his possession an anonymous letter, received by one of his clients through the mails, charging that the Marcus Brothers were crooks, but did not then disclose this fact to the receiver. Later, after the stores had been run several days, another anonymous letter, received by a cred-

itor of Marcus Brothers, was turned over to Thomas Benner, one of the attorneys for the receiver, which was discussed with counsel for creditors. It was then decided that nothing should be done about it, in view of the fact that the letter was anonymous. Whether the losses which the referee would surcharge upon the receiver occurred before or after Benner received notice of this anonymous letter is not disclosed by the evidence. At any rate, it appears that at some time during the operation of the stores by the receiver, large quantities of merchandise were abstracted from the store at 1907 Penn avenue by the Marcus Brothers. The amount of these abstractions was never accurately ascertained, but in a civil contempt proceeding against Marcus Brothers instituted by the receiver, this court found that assorted groceries to the value of $31,300 had been abstracted. There was some evidence also that some cash had been stolen from these stores, but there was never any determination of the amount.

The receiver, in the conduct of business at these two stores, used the employees of the Marcus Brothers' organization to carry on the business, but employed certain of its own regular employees, H. H. Bradford, Walters, and Martin to supervise the business. H. H. Bradford and Walters were in daily attendance at the stores except a few days when H. H. Bradford was absent and another employee was substituted.

It further appeared that A. J. Bradford, the trust officer of the receiver, frequently visited the two stores during the operation by the receiver, and looked over the manner of conducting the business.

The stores in question were operated by the receiver from May 7, 1924 to August 9, 1924, when they were closed by the receiver when he became convinced of the thieving operations being carried on by the Marcus organization. Thereupon, on the petition of the receiver, the Marcus Brothers were cited for contempt of court, and after due hearing, were ordered to turn over $31,300, the value of the property found to have been abstracted by them.

The referee finds that there was no negligence on the part of the receiver in the employment of Marcus Brothers and their organization in the conduct of the business, nor in the selection of the personnel of its own employees to whom was entrusted the supervision of the business; and rests his finding of negligence on the part of the receiver on the charge that the receiver failed to exercise proper supervision of the operation of the business in four particulars, i. e.: (1) The receiver was lacking in due care in permitting the store to be open and doing business for an hour or two regularly each morning in the absence of the receiver's representative; (2) the receiver was negligent in ignoring the anonymous letters; (3) the receiver was negligent in not observing that its cash expenditures exceeded its cash receipts; and (4) the receiver was grossly negligent in failing to keep itself properly informed as to the condition of the business.

After a careful review of the evidence, we are not convinced that these charges of neglect have been sustained. From the whole case it appears to us that the receiver exercised the utmost good faith in the conduct of the trust, and exercised all the care and prudence in the management thereof, which could properly be expected under the circumstances. We cannot find that there was any lack of proper supervision. We believe that the receiver's representatives did all that could be expected of them in the premises. The fact that H. H. Bradford did not arrive at the store mornings before 8:30 until 9 o'clock does not in our judgment, convict the receiver of negligence. The fact that Benner, the attorney for the receiver, had knowledge of the anonymous letters and duly considered the effect to be awarded to them after consultation with the attorneys for creditors, does not convict the receiver of negligence. It might have been an error of judgment, but certainly it was not negligence. We have reviewed the accounting system of the receiver and do not perceive any want of care there. In our opinion proper and sufficient records were kept. In August, when the receiver became convinced that there were thefts in the business, prompt action was taken to bring the Marcus Brothers to account by contempt proceedings in this court. We therefore conclude that there was no such neglect due to lack of proper supervision which would justify us in charging against the receiver the total losses due to the thefts of the Marcus crowd. Even if they were liable, we are of the opinion that the amount thereof has not been properly computed by the referee. We find no evidence in the case which will justify a finding that the losses due to thefts amounted to $62,879.11. Charging the receiver with the total inventory and price of goods purchased, and allowing credit for money received and insurance losses on goods burned in one of the stores, would not present a true account of the goods and money stolen.

This group of exceptions must be overruled.

 Group 2. These exceptions relate to payments to a detective agency in an attempt to unravel the story of the perfidy of the Marcus Brothers. We believe that these items were justifiable expenses which any careful and prudent business man would have undertaken in trying to uncover the amount of losses and bring the guilty parties to justice.

Finding the receiver to be at no fault in the matter of these thefts, we will overrule these exceptions and allow these items as a proper credit to the receivers.

Group 3. These exceptions relate to deposits to cover bills for gas and electricity. We cannot sustain these exceptions because the receiver in a statement filed May 3, 1932, fully accounts for these deposits and shows that it received due credit for these deposits in the final bills rendered by the Equitable Gas Company and the Duquesne Light Company.

These exceptions will, therefore, be dismissed.

Group 4. The expenditures of H. H. Bradford excepted to are, we believe, properly explained in the statement of the receiver filed May 3, 1932, being for services rendered the accountant in the collection of outstanding accounts receivable.

This exception will, therefore, be dismissed.

Our conclusion is that all exceptions to receiver's account should be dismissed and the account should be confirmed absolutely. The referee's order will be modified accordingly. An order in accordance with this opinion may be submitted.