In re MOORHEAD KNITTING CO.

No. 10280.

District Court, M. D. Pennsylvania.

Nov. 9, 1944.

See also, D.C., 52 F.Supp. 8; D.C., 58 F.Supp. 93.

Clarence P. Wynne, of Scranton, Pa., Trustee.

Harry S. Knight, of Sunbury, Pa., for Trustee.

Arthur Richenthal, of New York City, for S.E.C.

John W. Crolly, of Scranton, Pa., Special Master.

Robert T. Fox, of Harrisburg, Pa., Successor Trustee.

F. Brewster Wickersham, and Oscar G. Wickersham, both of Harrisburg, Pa., for Mtg. Bondholders Protective Comm.

W. E. Shissler and Robert Rosenberg, both of Harrisburg, Pa., John E. Myers, of Carlisle, Pa., Russel B. Updegraff, of New Cumberland, Pa., and Robert Dorsey, of Scranton, Pa., for various security holders.

Paul G. Smith, of Harrisburg, Pa., for debtor corporation.

Samuel Wilson, of Harrisburg, Pa., for Debentures Holders Protective Comm.

Paul L. Hutchison, of Harrisburg, Pa., for Preferred Stockholders Protective Committee.

Carpenter & Carpenter, of Sunbury, Pa., for Trustee.

John C. Herman, per se.

JOHNSON, District Judge.

Clarence P. Wynne, Trustee in Reorganization of Moorhead Knitting Company, a corporation, until his resignation of February 18, 1944, has filed in this court his final account of his administration.

To the final account exceptions were filed by the Bondholders' Protective Committee, the Debenture Holders' Protective Committee and the Securities and Exchange Commission.

The exceptions came on for hearing at Harrisburg, Pennsylvania, on September 28 and 29, 1944. At that hearing, testimony was presented by the exceptants and by the respondent.

At the conclusion of the hearing, F. Brewster Wickersham, Esquire, attorney for the Bondholders' Protective Committee, orally placed upon the record an assertion that he was satisfied with the explanations offered by the trustee in justification of his account and would, therefore, not press his exceptions. Samuel Wilson, Esquire, attorney for the Debenture Holders' Protective Committee, subsequently withdrew his exceptions in writing declaring that he was satisfied with the explanations given by Mr. Wynne.

The exceptions filed by the Securities and Exchange Commission, therefore, remain for disposition.

The first exception is that "Clarence P. Wynne improperly withdrew from estate funds the sum of $4,100 in excess of the amounts awarded him as interim allowances by orders of the Court." There is no dispute that the trustee paid himself this money; that it was paid by check; that the checks passed through the bank in the regular course of business; that the amounts were charged on the books of the company to the account of the trustee; and that the charges showed they were on account of compensation. Shortly after the start of Mr. Wynne's administration, this Court made an order granting him an ad interim allowance of $500 per month. Thereafter, in consultation with the attorneys for the Securities and Exchange Commission, Mr. Wynne voluntarily agreed to reduce his monthly compensation to $300 per month with the understanding that the difference of $200 would inure to his credit and would be received by him at a later date. The first ad interim order was revoked and subsequent petitions for ad interim allowances submitted to Court were in the reduced amount of $300. The reason it was deemed advisable to reduce the ad interim allowance was because the corporation was then operating at a loss and it was therefore better to reduce monthly expenses as much as possible. The operation of the business of the debtor was later discontinued due to the inability to procure raw materials after the attack upon Pearl Harbor. It is apparent to this Court that Mr. Wynne practiced no dis-

honesty in the withdrawals made on account of compensation. The difference between the first $500 allowance and the subsequent reduction to a $300 allowance had accrued to his credit and he considered himself entitled to it.

■ This estate involved approximately one million dollars and necessitated an immense responsibility and a great amount of work over a period of two years and eight months. Mr. Wynne made his reports to Court from time to time and those reports were filed and became a public record; his books and records, from the very start of his administration, were examined by the representatives and accountants of the Securities and Exchange Commission, and were also the subject of two audits; his final account, upon which these proceedings are based, has been carefully scrutinized by all parties in interest and has been the subject of an extended court hearing. If it has been the intention by these exceptions to attempt to secure a surcharge of Mr. Wynne as trustee for the unfaithful performance of his duties, it must be held that such an intention cannot be sustained. No evidence has been introduced which reflects upon the good faith of the trustee; no fraud or fraudulent intent has been shown and no loss to the debtor has occurred. On the contrary, Mr. Wynne's conduct of his trusteeship during a period made most difficult by great economic disturbances resulted in enhancement of the value of the estate through disposition of assets at prices much larger than the valuation placed thereon by experts, recovery of bad debts and adjustment of claims against the debtor. The very successful reorganization of this corporation is due, to a great extent, to the faithful attention of the trustee to the task and duties which confronted him. In the absence of proof of unfaithfulness, fraud, fraudulent intent, or loss, no surcharge can be maintained. Mr. Wynne's conduct of this estate during his administration reflects creditably upon his abilities. This exception must be dismissed and the former trustee allowed such reasonable compensation as would have been allowed had the exception not been taken.

The second exception is that: "On various occasions Clarence P. Wynne improperly withdrew from estate funds sums in advance and in excess of the amounts awarded him as ad interim allowances from time to time by order of the Court." The distinction between the first exception and the one above quoted is not apparent. The second exception cannot be sustained for the reasons heretofore given in disposing of the first exception.

■ The third exception is as follows:

"(3) (a) Clarence P. Wynne improperly withdrew from estate funds the sum of $4882.59 as expenses, such withdrawals having been made without court order, unsupported by proper vouchers, bills or records, and embracing items not properly identified or itemized, nor properly reimbursable;

"(b) The amounts set forth as withdrawn by Clarence P. Wynne for alleged expenses do not reflect the total amount so withdrawn by him."

The former trustee claims credit for the sum of $4882.59 expended as current traveling, hotel, telephone and other expenses incurred during his administration. It seems to be the contention of the remaining exceptant that orders of court should have been obtained for all these expenditures and, further, that the trustee should have produced bills and receipts for each item. It could not be expected that a trustee would be able to finance personally such expenditures out of his own pocket. If this were necessary it would be an impossibility to secure responsible and competent trustees to serve in such a capacity. The original order of this Court appointing Mr. Wynne as trustee is worded as follows:

"Said trustee is vested with power to administer said properties, assets and business, to preserve, maintain and keep the same in good condition and repair; * * * to make such payments and disbursements out of the property and assets of the debtor as may be needed or expedient for the proper administration, preservation, maintenance, and conduct of the business, property and assets."

If more were needed, it is but necessary to refer to the orders of this Court on the ad interim allowances, where, after setting forth the amount allowed, the following words appear:

"This to be in addition to reimbursement for any cash expenditures necessarily and reasonably made by the trustee during said period in connection with the services rendered by him as trustee."

■ The exceptant stated that receipts should be furnished by the trustee for all expenditures made by him in order to support properly his expense account. This is practically impossible. For example: A busy trustee cannot be expected to secure receipts for meals, gasoline purchases, taxicab hire, and telephone calls made from public booths during a business trip.

The exceptant further contended: First, That the charges made for traveling expenses to Harrisburg, Pennsylvania, varied in amount whereas they should have been uniform; second, that the trustee was not justified in his charges for office rent in Scranton, Pennsylvania; and third, that the trustee was not justified in his charges for stenographic expense in Scranton. The testimony taken at the hearing in Harrisburg on these matters reveals that the traveling expense could not be uniform as the trustee in some instances traveled to Harrisburg from Scranton, and in other instances he traveled to Harrisburg from Mifflinburg, Pennsylvania, where the testimony shows he had other business. The length of his stay in Harrisburg would, of necessity, compel a variance in the amount expended for hotel rooms and meals. Mr. Wynne stated that the office rent and stenographic expense in Scranton were incurred after the Harrisburg building had been leased and it therefore became necessary to transfer the books and records of the debtor to a new location. The decision to transfer the office to Scranton, where Mr. Wynne resided, resulted in a saving to the debtor as it obviated the necessity of frequent trips to Harrisburg. As to the exception alleging that "The amounts set forth as withdrawn by Clarence P. Wynne for alleged expenses do not reflect the total amount so withdrawn by him," it must be stated that no proof has been offered in support thereof. The exceptions set forth under the headings (3) (a) and (b) cannot be sustained.

The fourth exception is as follows:

"(4) The Final Report and Account of Clarence P. Wynne fails to disclose:

"(a) A payment of $719.36 by Clarence P. Wynne to the Danita Hosiery Mills, a pre-trusteeship creditor of the Debtor, and also improper book entries in connection with the said payment;

"(b) Write-offs by Clarence P. Wynne of salesmen's accounts aggregating $20,-497.95 at or about December 31, 1941;

"(c) Substantial losses sustained by Clarence P. Wynne in the operation of the Debtor's business prior to cessation of operations in or about March, 1942; and

"(d) A balance in the inventory accounts in the aggregate amount of $7979.21;"

■ When the trustee assumed charge of the debtor, the books showed a debt due the Danita Hosiery Mills in the amount of $719.36. This account would have been treated as were all other debit accounts of the Moorhead Knitting Company, had it not been for the receipt by the trustee of an order to supply certain goods, the raw material for which was obtainable only from the Danita Hosiery Mills, which refused to furnish the raw material until the old bill for $719.36 had been paid. The trustee determined that filling the order received would result in a net profit to the debtor of approximately $1,500 and was then confronted with the choice of losing the order and resultant profit or arriving at a solution of the problem by satisfying the demand of the Danita Hosiery Mills. It was finally agreed that the Danita Hosiery Mills should increase the amount of the cost of its raw materials in a sum sufficient to recoup its old debt and all the profit would not be lost by Moorhead Knitting Company. This was done and the trustee's bookkeeper charged the old debit account with the sum of $719.36, thus closing and balancing out that old account. The transaction was not, therefore, in reality, a payment of pre-trusteeship account.

■ When Mr. Wynne assumed his duties as trustee, the appraisal made of the salesmen's accounts aggregating $20,497.-95 revealed these accounts as valueless. The testimony shows that amount had been advanced on commissions to salesmen who had long since left the employ of the debtor, and was considered uncollectible. The record shows that the audit made by Frank Dershem, a well known auditor, as of the date upon which Mr. Wynne took office, also states the salesmens' accounts of no value. Mr. Wynne's action in writing off these accounts on the books of the debtor resulted in no loss to the debtor. The write-off was a mere bookkeeping transaction. If it should subsequently appear that

some value exists in these accounts, they are still in the possession of the successor trustee, despite the write-off, and recovery can still be had. As to the exception to a failure to disclose substantial losses sustained in the operation of the debtor's business, there is no evidence of any losses or particular items of loss due to negligence, mis-management or inattention to the business of the debtor.

■ Mr. Wynne took over the business as a going concern and operated it from June 24, 1941, the date of his appointment, to March, 1942. He took over a business, as will be shown by the several reports filed by Mr. Wynne and on record, that had been losing large amounts of money for at least three or four years prior to Trusteeship. He immediately inaugurated new methods of financing the sales by factoring them, all of which methods reflected a gain over the previous operation; and if war had not intervened and made the securing of raw material by Trustees and Receivers almost impossible, and later impossible by any person, the Moorhead Knitting Company would probably have been a profitable, continuing business; but the war changed the economic conditions of our country and soon convinced the Trustee, as will appear in the records and reports, of the inadvisability of continuing the business under the then existing circumstances, and from that time on his attention was given largely to closing out an operating business, which finally culminated in the sale of the machinery in March, 1942. To say that a Trustee is chargeable with a loss in the operation of a going business, without at the same time pointing out specific acts of negligence and carelessness, is not sufficient to sustain the exception. It may be added here that when the trustee made application to the Court for the right to issue trustee's certificates, for the purpose of carrying on the debtor's business, the representatives of the present exceptant were then in favor of a continuance of operation, although it was well known to them that the debtor was operating at a loss.

■ As to the exception that the account filed fails to disclose a balance in the Inventory Accounts in the amount of $7979.21, the testimony reveals that these accounts are still in existence on the general ledger of the debtor corporation but have been liquidated and accounted for;

are shown in the receipts and are posted in the factory ledger but have not yet been extinguished on the general ledger. The exceptions to the matters above discussed cannot be sustained.

The fifth exception is as follows:

"Clarence P. Wynne fails to account properly for certain items of court costs aggregating $385.35, which items consist of payments made to Elsie I. Culp, Leonard Orloff and F. Arthur Rianhard;"

Miss Culp acted as an official reporter at times when other reporters were not available and the transcripts of the testimony taken by her are filed in the files of these proceedings. The bills presented by her were approved by the special master or the presiding judge before payment and the trustee produced from his office files all of the approved bills, but one, which he stated must have been lost or mislaid. It appears that the bills presented by Miss Culp were computed at a lower rate than that charged by other reporters who had taken other testimony in this case.

Mr. Rianhard was an official appraiser, appointed by this Court. In that capacity he rendered services to this estate and was paid therefor after consultation with the Court.

■ The record shows that Leonard Orloff, Esquire, was the attorney for a purchaser of a number of sewing machines, sold at auction at the time of the disposal of the debtor's machinery. It appears that a controversy arose after the sale which was compromised by a payment to the attorney for the purchaser in the amount of $75. The testimony revealed that the check to Attorney Orloff was endorsed by him to the order of his client. The settlement and compromise of this dispute was within the power and discretion of the trustee. The testimony concerning the matters raised in the fifth exception shows that the explanation of the trustee was not controverted and the fifth exception cannot be sustained.

The sixth exception is as follows:

"The records of Clarence P. Wynne, as Trustee, were not maintained in a detailed and accurate manner; the statement of assets and liabilities as of March 23, 1944, as accounted for by Clarence P. Wynne, are at variance with the audited accounts; an increase of $78,726.00 in the net worth position of the Debtor during the period

from June 24, 1941 to February 18, 1944, as shown by the account of Clarence P. Wynne, is not reconciled or explained;"

The record shows that there is no allegation in this exception that the trustee has made improper expenditures or failed to account for assets which came into his possession; there is no allegation that the trustee has failed to charge himself with assets which came into his possession nor that the estate has suffered any loss. The testimony taken revealed that a comparison of Main and Company's audit and the trustee's account shows but one substantial difference. The trustee used the appraised value of the building and land in Harrisburg, $307,062.83, and Main and Company used the figure of $252,876.64, taken from the company books. That fact accounts for a difference amounting to $54,186.19. The difference betwcen the audit and the account amounts to $78,726, and the testimony reveals that it is due to bookkeeping methods. The difference, moreover, is in the favor of the trustee, as it is his account which shows the increase of assets. This exception must therefore be dismissed.

All the exceptions filed have been discussed herein and have been disposed of.