In re Frederick C. STURM, III, t/a Legal Insurance, Legal Associates, Judicare, Advanced Legal Systems, Debtor.

Anthony B. QUINN, Plaintiff,

v.

FIDELITY & DEPOSIT CO. OF MARYLAND and Mitchell W. Miller, Esquire, Defendants.

Bankruptcy No. 81–05108S.
Adv. No. 90–0773S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 28, 1990.

Mitchell W. Miller, Philadelphia, Pa., Substitute Trustee.

Edward Cohen, Philadelphia, Pa., for debtor.

Edward J. DiDonato, Philadelphia, Pa., for Substitute Trustee.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa., U.S. Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant matter, retained in this court upon remand from a state court because of its status as a core proceeding in this re-opened case converted from Chapter 11 to Chapter 7, presents an alleged creditor's claim against a Trustee and his predecessor's bonding company for failure to pay his claim in the distribution of the estate's assets. In reviewing the divergent authorities regarding the potential immunity of the Defendants from liability for the stated cause of action, we conclude that, pursuant to the controlling law of this Circuit, a Trustee may be personally liable for negligent failure to properly distribute estate funds. However, we fail to find that the Trustee or his predecessor were negligent.

We also find that the Plaintiff failed to prove the existence and terms of a contract of suretyship which could render the bonding company liable to him. Therefore, we proceed to enter judgment in favor of the Defendants.

## B.  PROCEDURAL HISTORY

The underlying bankruptcy case was commenced as a voluntary Chapter 11 case on September 12, 1981, by FREDERICK C. STURM, III ("the Debtor"), a purveyor of several legal clinics whom the Plaintiff testified was in fact not a licensed attorney. The case was converted to a Chapter 7 case on or about February 15, 1982. James J. O'Connell, Esquire ("O'Connell"), then the Philadelphia Standing Chapter 13 Trustee and presently the Assistant United States Trustee in this City, was appointed as interim Trustee. On February 15, 1982, Defendant FIDELITY & DEPOSIT COMPANY OF MARYLAND ("F & D") issued a surety bond of $150,000 in favor of O'Connell.

It is an understatement to observe that the estate was administered deliberately. As of May 24, 1988, when Defendant MITCHELL W. MILLER, ESQUIRE ("Miller"), was named to replace O'Connell after O'Connell's appointment as Assistant United States Trustee, nothing occurred after the completion of most of the litigation spawned by this case by late 1983 until an aborted Final Audit Hearing was scheduled in late 1987. With prodding by this court, beginning with an Order of November 17, 1988, requiring prompt filings, a Final Audit Hearing was consummated on March 1, 1989; a Final Order of Distribution was entered on May 9, 1989; and the case was closed on August 4, 1989.

On or about August 15, 1990, ANTHONY B. QUINN, ESQUIRE ("the Plaintiff"), commenced an action at No. 90–8–15–01406, in the Philadelphia Municipal Court ("the PMC"), the local small claims court, naming F & D and Miller as Defendants. This action was based upon the Plaintiff's failure to receive payment of an alleged Proof of Claim for wages, salary, or commissions in the amount of $4,867.84. The

matter was listed for trial in the PMC on October 10, 1990.

On September 4, 1990, the Trustee filed a motion to reopen the underlying main bankruptcy case and an Application for Removal of the matter to this court. On October 2, 1990, the Plaintiff filed a Motion to Remand this proceeding to the PMC. We scheduled briefing on the Motion to be completed by October 18, 1990, and set down any trial necessary on October 25, 1990.

On October 19, 1990, we issued a Report, pursuant to Bankruptcy Rule ("B.Rule") 9027(e), recommending that the Motion to Remand be denied, since this matter (1) involved administration of the Debtor's estate; (2) directly affected the liquidation of the estate's assets; and (3) involved the allowance of the Plaintiff's claim against the estate, and hence was a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O), respectively. We ordered that the scheduled trial of October 25, 1990, should proceed. And it did.

The only witnesses at the trial were the Plaintiff and Miller, both appearing pro se. Miller's answer indicated that he was also representing F & D. It was also stipulated that the court could consider the contents of the entire file in the Debtor's case. The file was retrieved from storage and carefully reviewed by the court prior to making it available to the parties. The parties were accorded until November 20, 1990, to simultaneously file their Briefs in this matter. Both remitted concise submissions in timely fashion.

## C.  FINDINGS OF FACT

As a result of this testimony and review of the file, we make the following Findings of Fact:

1.  The Debtor did not list the Plaintiff as a creditor on his Schedules.

2.  The only meeting of creditors pursuant to 11 U.S.C. § 341 ever held in this case was conducted on January 28, 1982, while the case was still proceeding under Chapter 11.

3. No bar date for filing claims was ever established while the case was in Chapter 11 and, since there was no § 341 meeting after the case was converted, no bar date was ever established pursuant to B.Rule 3002(c).

4. The claims docket, consistent with the claims physically included in the file, lists 20 claims filed between January 22, 1982, and August 22, 1983. No claim filed on behalf of the Plaintiff appears on either the claims docket or in the file.

5. The Plaintiff admitted into evidence a copy of a letter dated October 29, 1982, which is addressed to "Clerk, U.S.Bky.Ct., E.D.PA., 6021 Market St., Philadelphia, PA. 19106" and includes the notation "cf, with enclosure: James J. O'Connell, Esquire." This letter purports to cover a Proof of Claim. The Plaintiff testified that the address was corrected and the letter was sent to 601 Market St., Philadelphia, PA. 19106, the actual address of the courthouse in which the Bankruptcy Court is located.

6. The Plaintiff also admitted into evidence a copy of a Proof of Claim, containing a time-stamp of November 15, 1982, but no initials of a Deputy Clerk. The Proof of Claim reads as follows:

1. The debtor owes the claimant computed as follows:

(a) wages, salary or commissions for services performed from August 1, 1981 to March 1, 1982, at the following rate of compensation: $35.00 per hour

Total amount claimed: $4867.84.

2. The claimant demands priority to the extent permitted by 11 U.S.C. section 507(a)(3) and (4).

3. The claimant has received no payment, no security, and no check or other evidence of this debt except as follows:

Paid as of January 15, 1982: $1860.00

Dated: October 29, 1982.

7. The Plaintiff had, in his file, two stamped copies of the Proof of Claim. He asserted that the filing was accomplished and the stamped copies were returned to him by a filing service.

8. The Plaintiff stated that he monitored the progress of the case by checking the case docket on approximately an annual basis. The last review was allegedly performed in late 1988.

9. The Plaintiff further stated that he never checked the claims docket or registry or reviewed the file to see whether his claim had been recorded.

10. Included in the main case file was a copy of a Bond signed by O'Connell and an agent of F & D promising that O'Connell shall obey such orders as said Court may make in relation to said trust, and shall faithfully and truly account for all the moneys, assets and effects of the estate of the said bankruptcy which shall come into his hands and possession, and shall in all respects faithfully perform all his official duties as said Interim Trustee. No copy of any surety agreement between F & D and O'Connell was included in the record or the file.

11. Placed into the record is the following correspondence from Miller or O'Connell to the Plaintiff:

a. A letter of November 10, 1989, from Miller enclosing the Final Order of Distribution and advising that no funds were available to pay the Plaintiff.

b. A letter of December 18, 1989, from O'Connell to F & D agreeing to hold that company harmless from the Plaintiff's claim. The letter to the Plaintiff is rather insulting, referencing the Plaintiff's "apparent lack of knowledge of or even the basic law or mechanics of a trustee's bond," and cautioning him not to commence a "frivolous law suit."

c. A letter of January 2, 1990, from Miller which is also rather insulting, alleging that "[a]pparently you absolutely refuse to listen to reason."

12. Miller testified that he was unaware that the Plaintiff had claimed to have filed any proof of claim prior to the closing of the case on August 4, 1989. He stated that he believed that he had received only "a portion" of O'Connell's complete file when he succeeded O'Connell as Trustee. He further stated that no copy of the Plain-

tiff's letter to O'Connell covering the Proof of Claim was included in the file that he received.

13. The Plaintiff argued vigorously that Miller was negligent in not assuring himself that he received the entire file from O'Connell, which he hypothesized may have included a copy of the letter covering the Proof of Claim.

## D.  DISCUSSION

The principal authority relied upon by the Plaintiff is a recent Opinion by Judge Fox of this court in *In re Oxford Royal Mushroom Products, Inc.*, 93 B.R. 390 (Bankr.E.D.Pa.1988), *aff'd*, C.A. No. 89–0264 (E.D.Pa. March 1, 1989). That case involved an objection to a late proof of claim filed by Frezzo Brothers, Inc. ("Frezzo"), a claimant who was the alleged assignee of a timely proof of claim which the trustee had paid. Frezzo's claim was based upon its contention that, prior to the bar date or any distribution, it had filed a copy of the assignment of a timely claim, the assignment of which did not appear in the case file. Relying on the documents of record, the trustee had erroneously paid the assignee of the claim.

At trial, Frezzo produced the following: (1) A time-stamped copy of the assignment, initialled by a Deputy Clerk. 93 B.R. at 392, 396; and (2) Testimony and evidence of two letters from its agent to the trustee's counsel in the year prior to the distribution which advised counsel of the assignment, two replies from the trustee's counsel, and two telephone calls between Frezzo's agent and the trustee's counsel. *Id.* at 392–94. As a result of this evidence, Judge Fox overruled the trustee's objection to Frezzo's claim, stating as follows:

> I find that Frezzo Brothers satisfied its obligations under R. 3001(e)(2) by its filing of this evidence of transfer. The fact that the document is not located in the bankruptcy court's files does not negate the fact of filing. *See In re Nimz Transportation, Inc.*, 505 F.2d 177 (7th Cir.1974); *In re Imperial Sheet Metal, Inc.*, 352 F.Supp. 1149 (M.D.La.1973); *Matter of Kero–Sun, Inc.*, 63 B.R. 50

(Bankr.D.Conn.1986). *Compare In re Beattie*, 102 F.Supp. 107 (W.D.Mich.1951) (proof of claim not located in clerk's office held not filed, where claim was mailed to referee but record did not establish that the claim was, in fact, received).

*Id.* at 396–97.

Perhaps because he was personally affronted by the missives from O'Connell and Miller, referenced at pages 445–446 *supra*, the Plaintiff did not choose the conservative approach of simply attempting to have his claim allowed, which was utilized by Frezzo in *Oxford Royal Mushroom, supra*. Rather, he sued Miller and O'Connell's surety personally. By approaching the issue in this fashion, the Plaintiff has raised the spectre of the personal immunity of a bankruptcy trustee as an issue. By way of contrast, the issue of the Trustee's immunity was not placed directly before the court in *Oxford Royal Mushroom* because of the manner in which the issue was raised.

There are of course also important distinctions between the instant facts and those of *Oxford Royal Mushroom*. The fact that the Plaintiff had two stamped copies of the Proof of Claim in his possession suggested the possibility that the filing service had two copies stamped and none filed. The absence of the initials of a Deputy Clerk make it less certain that the original copy of the document was actually delivered to a clerk's office employee.

Also, in contrast to the six communications between Frezzo and the trustee's counsel in *Oxford Royal Mushroom*, the Plaintiff alleged but one unacknowledged communication with O'Connell, prior to the closing of the bankruptcy case.

At trial the court raised the issue of whether the Plaintiff's claim, even if filed, should not have been disallowed because it had not been filed until after the bar date. This was because the court believed that the case had always been a Chapter 7 case, having overlooked the fact that it had been converted from Chapter 11 to Chapter 7. Had this case been filed as a Chapter 7 case, the bar date would have been established, by effect of 3002(c), 90 days after

the first scheduled date of the § 341 meeting, which would have been no later than 90 days after the first meeting was held on January 28, 1982, or on April 28, 1982. However, since it was filed as a Chapter 11 case and no bar date was fixed, as required by B.Rule 3003(c)(3), no bar date was established. Therefore, none of the 20 claims filed through August 22, 1983, were subject to any bar date. Nor would the Plaintiff's claim have been subject to a bar date, assuming it had been filed.

■ However, to decide this case, unlike *Oxford Royal Mushroom*, it is necessary that we consider the issue of the potential immunity of the Trustee. Unfortunately, our review of this subject reveals that significant differences exist among the Courts of Appeals and inferior courts, apart from those of our own Third Circuit, regarding the standards for determining when a trustee is immune from personal liability from suit. A few courts have held that a trustee is personally liable "only for a willful and deliberate violation of his fiduciary duties." *In re Chicago Pacific Corp.*, 773 F.2d 909, 925 (7th Cir.1985); *United States, etc. v. Sapp*, 641 F.2d 182, 185 (4th Cir. 1981); and *In re Tucker Freight Lines, Inc.*, 62 B.R. 213, 217 (Bankr.W.D.Mich. 1986). *Cf. In re San Juan Hotel Corp.*, 847 F.2d 931, 937 (1st Cir.1988) (trustee held to have engaged in willful and deliberate violation of duties was held personally liable).

A larger number have held that a trustee may be "surcharged" or held personally liable for mere negligence. *See In re Gorski*, 766 F.2d 723, 727 (2d Cir.1985); *Red Carpet Corp. of Panama City Beach v. Miller*, 708 F.2d 1576, 1578 (11th Cir.1983); *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir.1983); *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461 (6th Cir.1982); *Sherr v. Winkler*, 552 F.2d 1367, 1374 (10th Cir.1977); *In re B.A. Montgomery & Son*, 17 F.2d 404, 406–07 (N.D.Ohio 1927); and *In re Consupak, Inc.*, 87 B.R. 529, 542 (Bankr.N.D.Ill.1988). *See generally*, E.A. Tiller, *Personal Liability of Trustees & Receivers in Bankrupt-* cy, 53 AMER.BANKR.L.J. 75, 93–96 (1978) (cited as "Tiller").

Since the Defendants in this case have attributed prominence to this court's Orders authorizing the distribution effected which excluded the Plaintiff's claim and closed the case after distribution, we must also consider the applicability of cases holding that "[b]ankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to court order," *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir.1989), and that, when a trustee is "acting under the authority of the bankruptcy judge, [he] is entitled to derived judicial immunity because he is performing an integral part of the judicial process." *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir.1986). *See also Mullis v. U.S. Bankruptcy Court for District of Nevada*, 828 F.2d 1385, 1390 (9th Cir.1987); *Yadkin Valley Bank & Trust Col v. McGee*, 819 F.2d 74, 76 (4th Cir.1987); *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981); *United States v. Eyges*, 286 F. 683, 684 (D.Mass.1923); *In re Jacksen*, 105 B.R. 542, 544–46 (Bankr. 9th Cir.1989); and Tiller, *supra*, 53 AMER.BANKR.L.J. at 98.

We have intentionally reserved discussion of pertinent Third Circuit cases in order that we could first describe the judicial landscape into which they fit. The only relevant decisions of the Court of Appeals which we could locate were decided under the Bankruptcy Act over fifty years ago, *In re Prindible*, 115 F.2d 21 (3d Cir.1940); and *In re Lambertville Rubber Co.*, 111 F.2d 45 (3d Cir.1940).

In *Prindible*, the court had before it a complaint of a secured creditor that a trustee had sold, per an order of distribution of the bankruptcy referee, 115 F.2d at 63, property encumbered by its lien free and clear of all liens, and then proceeded to distribute all of the proceeds to administrative claims, including his commissions. The court was caustic in its criticism of a trustee who not only allowed the entire fund to be "eaten up" by administrative expenses, but caused a lienholder to be "divested of his security without his con-

sent." *Id.* at 24. Without hint of any concern for any immunity of the trustee, the Court held that, after the referee reviewed the propriety of the administrative costs upon remand and gave priority to the valid liens, the referee was obliged to "surcharge the trustee for the improvident payments." *Id.*

In *Lambertville*, the trustee, without the blessing of a court order, paid unliened state unemployment compensation taxes of the debtor in priority to the secured debt of a factor. With, again, no recognition of any immunity of the trustee, the court holds that "he acts at his own risk and if his judgment is bad, he must accept the consequences." 111 F.2d at 48. The court concluded "the trustee acted negligently.... He must therefore be surcharged." *Id.* at 50.

We have located five lower court opinions issued by courts in the Third Circuit addressing the issue of immunity of a bankruptcy trustee. *In re Bobroff*, C.A. Nos. 89–8123, slip op. at 15, 1990 WL 178557 (E.D.Pa. Nov. 13, 1990); *Howard v. Leonard*, 101 B.R. 421 (D.N.J.1989) (involves United States Trustee); *In re Jack Lopez Wholesale Shirt Laundry, Inc.*, 435 F.Supp. 1031 (E.D.Pa.1977); *In re Moorhead Knitting Co.*, 58 F.Supp. 88 (M.D.Pa. 1944); and *In re Marcus*, 2 F.Supp. 524 (W.D.Pa.1932). Although *Prindible* and *Lambertville* predated all but *Marcus*, they are not cited in any of those decisions.

*Jack Lopez* is of some particular interest because it was a successful attempt, by the Internal Revenue Service, to proceed against the surety of a bankruptcy receiver to recover withholding taxes not paid by the receiver during his tenure in operating of the debtor's business. In *Bobroff*, the court stated that "[t]he trustee's duty is often summarized as one of reasonable diligence towards the discharge of their [sic] statutory duties...." Slip op. at 15. In *Marcus* a claim that a trustee should be liable for funds improperly embezzled from the estate by the debtor's principals was rejected. The standard applied by the court was that "a receiver is liable to surcharge only when guilty of fraud or supine

negligence equivalent to fraud." 2 F.Supp. at 525. In *Moorhead* the court absolves a bankruptcy trustee from liability because "[n]o evidence has been introduced which reflects upon the good faith of the trustee; no fraud or fraudulent intent has been shown...." 58 F.Supp. at 90. Finally, the *Howard* decision, citing *Lonneker Farms*, *Mullis*, and *Boullion, supra*, concludes that "[a]bsolute immunity has been specifically conferred on trustees in bankruptcy" when their duties "are 'an integral part of the judicial process.'" 101 B.R. at 423.

In sum, these decisions cover the entire spectrum of the judicial pronouncements regarding the standards for potential immunity of bankruptcy trustees established by the various Circuits described at pages 447–448 *supra*. However, it is clear to us that we do not have the luxury of choosing which of these formulations is consistent with our personal views of the matter. Rather, we are obliged to adhere to the pronouncements of the Court of Appeals in *Prindible* and *Lambertville*. *See, e.g., Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 867 (3d Cir.1984).

The standards applied in both *Prindible* and *Lambertville* are consistent with the majority rule that a trustee is subject to personal liability via surcharge if his conduct is no more than negligent. Despite the presence of the *Howard* decision, which may be explainable because it involves personal liability of the United States Trustee, the fact that a court order authorized the trustee's allegedly wrongful actions in *Prindible* was not found to create any sort of absolute or even qualified immunity. Therefore, we conclude that, if we found a trustee chargeable with negligence, we would be obliged to impose personal liability upon him. Also, in light of *Jack Lopez, supra*, if we found a valid contract of suretyship to prevail, we would be obliged to find F & D liable to the Plaintiff as well.

■ The difficulty with the Plaintiff's case is that we do not think that he has proven that either Miller or O'Connell were negligent. Rather, we conclude that the Plaintiff's own "supine negligence," especially given his own legal training, was the

primary cause of the non-payment of his claim.

It is almost impossible to understand what actions of Miller the Plaintiff deems chargeable as negligent. Appointed in 1988, Miller could properly rely only upon the claims docket and the file as the source of designating which claims were to be paid. We expressly decline to hold that he had any obligation to comb O'Connell's files or pick O'Connell's brain to rule out the frankly unlikely prospect that a claim not included in the docket or the claims file existed, especially since no claims had been filed subsequent to August 22, 1983. The likelihood that a claimant would patiently await payment without making certain that his claim was properly recorded for over five years was at best remote. We refuse to find that Miller had any obligation to foresee this contingency.

The actions of O'Connell present a slightly closer question. There is some evidence, albeit only a "cc, with enclosure" notation on the letter of October 29, 1982, to the Clerk's office (the original of which apparently never reached its destination), that the Plaintiff mailed a copy of his Proof of Claim to O'Connell. If it were proven that O'Connell actually received the Proof of Claim, it could be argued that he breached a duty, arising under B.Rule 5005(b), to transmit same to the clerk of court. However, due to the fact that there is no evidence that *any* of the Plaintiff's dispatches reached their intended destinations, we refuse to find that O'Connell actually received a copy of the Proof of Claim.

At this point, the negligence of the Plaintiff becomes important. The Plaintiff is a practicing attorney, who testified that he made occasional appearances for clients in this bankruptcy court. Such a non-lay claimant is chargeable with at least some knowledge of the workings of our court or courts generally. The Plaintiff clearly could and should have checked the claims docket or the file at some time between November 15, 1982, and May 9, 1989; ascertained that his claim was not listed; and attempted to rectify the error (or at least have obtained a court determination

of whether his claim would be allowed) before prejudice to the other claimants and ultimately to the trustee would attach.

Instead, the Plaintiff, over the period of 6½ years of delay in administration of this case, which should have worked to his benefit, testified that he checked only the main case pleadings docket on an annual basis, most recently in late 1988. Even from this review of the docket, the Plaintiff should have observed that an aborted attempt at a Final Audit hearing occurred in 1987, that Miller had been appointed as trustee, and that a schedule for closing the case was established. Yet, the Plaintiff did nothing to rectify his apparent failure to receive notice of the aborted Final Audit Hearing or to contact Miller, or to attend any of the other proceedings listed on the docket until late 1989. In our view, these acts of negligence on the part of the Plaintiff, moreso than any actions of O'Connell, resulted in his failure to obtain any payment on his alleged claim.

█ Moreover, O'Connell is not a party to this lawsuit. As *Jack Lopez* teaches, a trustee's surety may be adjudged liable even in the absence of his principal as a party defendant. However, here, assuming *arguendo* that O'Connell were found negligent, which is an unsatisfied precondition of F & D's liability, the Plaintiff has not presented any but the sketchiest evidence of the undertaking of F & D. "In actions on the undertakings of sureties, the burden of proof rests, as is the case generally, on the party who asserts the affirmative of an issue." 74 AM.JUR.2d 106 (1974). *Cf. In re Fricker*, 116 B.R. 431, 437–48 (Bankr.E.D.Pa.1990). The contract which is the basis of the suretyship obligation should be attached to the complaint, or at least placed into evidence in an action asserting a claim against a surety. *See General State Authority v. Ross Construction Co.*, 84 DAUPHIN CO.RPTS. 43, 44 (Dauphin Co.C.P.1965); *Commonwealth v. New Amsterdam Casualty Co.*, 3 Pa.D. & C. 77, 77–79 (Dauphin Co.C.P.1922); and *Drake v. Philadelphia & P.R.R.*, 5 PA.C.C. RPTS. 21, 23 (Phila.Co.C.P.1888). Here, we have no contract and therefore we are

unable to ascertain either the undertaking of F & D or why that undertaking should give rise to liability.

Finally, we return briefly to the pertinent caselaw to note three cases other than *Oxford Royal Mushroom, supra,* which were somewhat factually analogous to the instant case, *In re Nash,* 765 F.2d 1410 (9th Cir.1985); *Beattie, supra;* and *In re XRX, Inc.,* 77 B.R. 797 (Bankr.D.Nev.1987). In *Beattie,* the court disallowed a claim which was mailed to a bankruptcy referee rather than filed. 102 F.Supp. at 110. This result is noted in *Oxford Royal Mushroom,* and distinguished because of the multiple contacts of the assignee there with the trustee's counsel. In this respect, this case is more like *Beattie* than *Oxford Royal Mushroom. Cf. In re Wilbert Winks Farm, Inc.,* 114 B.R. 95, 97 (Bankr.E.D.Pa. 1990) (only the filing of a pleading in bankruptcy court is sufficient to constitute an "informal proof of claim").

In *Nash,* the court found a trustee liable for making an erroneous distribution. 765 F.2d at 1415. However, it queried whether the party who improperly received the funds might also be liable. *Id.* at 1415 n. 3.

In *XRX,* the trustee failed to pay a claim in the amount expressly allowed by order of court. Nevertheless, the court stated that "it was entirely inappropriate for [the claimant] to initiate this action against [the trustee] personally." 77 B.R. at 798. As an alternative, the court suggested that the frustrated claimant should have filed an order to show cause why its order allowing the claim in a certain amount had not been complied with or should have pursued a motion to surcharge other claimants erroneously paid. *Id.* at 798 n. 3.

■ These statements in *XRX* and *Nash* bring to mind the fact that an error in making distribution does not normally effect a windfall to the trustee. An exception might be the situation which arose in *Prindible,* where the court felt that the trustee was feathering his own commissions at the expense of a creditor. This factor might have explained the harsh tones taken towards the trustee in that opinion. Usually, however, an erroneous distribution effects a windfall to other creditors. Normally, a trustee may recover distributions which he has mistakenly made from the recipients receiving the windfall due to a factual mistake. *See In re Jules Meyers Pontiac, Inc.,* 779 F.2d 480, 482 (9th Cir.1985). *Cf. Hoffa v. Fitzsimmons,* 673 F.2d 1345, 1354 (D.C.Cir.1982); *Wilson & Co. v. Douredoure,* 154 F.2d 442, 445–46 (3d Cir.1946); *Shipping Corp. of India, Ltd. v. Sun Oil Co.,* 569 F.Supp. 1248, 1260 (E.D.Pa.1983); *Union Trust Co. v. Gilpin,* 235 Pa. 524, 529–30, 84 A. 448, 450 (1912); and RESTATEMENT OF RESTITUTION, § 20, at 92 (1937). *But see In re Vick,* 75 B.R. 248 (Bankr.E.D.Va.1987) (trustee disallowed recovery of disbursement where suit for refund was delayed until five years after disbursement).

Thus, it is only where the trustee's negligence might bar a suit for recovery against the mistaken beneficiaries of an excessive payment where recovery from a trustee, as opposed to a suit against the recipients of the windfall, is the frustrated claimant's only resort. This result is also consistent with the conclusion that a trustee is liable to the unpaid claimant only when the trustee is chargeable with negligence.

We decline to find either O'Connell or Miller to have been negligent in failing to make a distribution to the instant Plaintiff. Therefore, we will enter judgment in favor of the Defendants.

E. CONCLUSION

An appropriate Order follows.