AMATEX CORPORATION,

v.

STONEWALL INSURANCE COMPANY.

AMATEX CORPORATION,

v.

INTERSTATE FIRE & CASUALTY CO.

AMATEX CORPORATION,

v.

BELLEFONTE INSURANCE COMPANY.

AMATEX CORPORATION,

v.

The AETNA CASUALTY AND SURETY COMPANY.

Civ. A. Nos. 89–2840 to 89–2843.

United States District Court, E.D. Pennsylvania.

July 21, 1989.

**412**

William Bradbury, Wright, Manning, Kinkead & Olive, Norristown, Pa., Joseph Simmons, Deputy in Charge of Bankruptcy Operations, Philadelphia, Pa., for plaintiff.

Robert Corbin, Philadelphia, Pa., for defendants.

## MEMORANDUM

GILES, District Judge.

The present case comes as an appeal from a final order of the bankruptcy court. This court has jurisdiction to hear such appeals pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rule 8001(a). Debtor Amatex Corporation was insured for products liability by Aetna Casualty and Surety Co. (Aetna), Bellefonte Insurance Company (Bellefonte), Stonewall Insurance Company (Stonewall), and Interstate Fire & Casualty Company (Interstate). Debtor filed complaints against all four insurers on May 12, 1988, requesting the bankruptcy court to compel the insurers to order the insurance carriers to pay the remaining limits of their comprehensive general liability policies into two trusts proposed by the debtor in its Plan of reorganization for the benefit of claimants who have become known as the "Asbestos Litigants". The bankruptcy court granted the four insurance carriers' motions for summary judgment and debtor appealed all four judgments. The four cases were consolidated for the purpose of this appeal.

The debtor raises only one issue on appeal. It claims that the bankruptcy court erred in entering judgment for the defendant insurance carriers, thereby declining to exercise it broad equitable powers to order the insurance carriers to pay the remaining proceeds of their policies into the debtor's proposed trust for the benefit of various claimants allegedly suffering from asbestos related personal injuries or property damage.

In making its decision, the bankruptcy court took into account the fact that the debtor had conceded that: (1) the insurance contracts between the parties did not require the insurers to make lump-sum payments up to their policy limits prior to the time that the debtor becomes legally liable for those funds; (2) Pennsylvania law requires insurers to reimburse the insured party only in accordance with the terms of the contract; (3) there are no ambiguities in the insurance contracts which would result in an interpretation of them requiring lump-sum payments. Based on these facts, which are not now contested by the debtor, the bankruptcy court concluded that:

> The use of our equitable power which is urged by the Debtor in these proceedings would fly directly in the face of very basic tenants of Pennsylvania insurance law, *i.e.*, it would require us to order insurers to remit payments to an insured party which are admittedly not otherwise due under unambiguous terms of the policies.... [T]his court is not authorized, pursuant to [11 U.S.C.] § 105(a), or any other authority, to disregard established state law principles in providing relief to the Debtor.

Record, # 18 at 17–18.

Under 11 U.S.C. § 105(a), the bankruptcy court has the power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." It also may take any action or make any determination "necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process." 11 U.S.C. § 105(a). Based upon this rule, the debtor argues that the requested modification of the insurance contracts' terms is within the bankruptcy court's power.

The debtor argues that 11 U.S.C. § 541 and § 542, which define the scope of a debtor's estate and give the bankruptcy court the power to order that the property of the debtor be turned over the estate, together with § 105(a), gives the bankrupt-

cy court the power to order the insurers in this case to make the requested lump-sum payments. Section 541 includes within a debtor's estate "all legal and equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

The bankruptcy court noted in its opinion that, on the occasions when it has used its powers under § 105(a), it has done so with extreme caution. The Supreme Court has held that such powers "must and can only be exercised within the confines of the Bankruptcy Code" and that the substance and remedies provided under state law must be the guiding force of bankruptcy court decisions, rather than the "demands of equity." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988); *Butner v. United States*, 440 U.S. 48, 55–56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *See also Southern Ry. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir.1985) ("section 105(a) does not authorize the bankruptcy court to create rights not otherwise available under applicable law.")

The debtor cites several cases which it contends stand for the proposition that insurance contracts are property within the meaning of the bankruptcy statutes. Debtor cites the cases of *In re Johns–Manville Corp.*, 40 B.R. 219, 230 (S.D.N.Y.1984), *MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89 (2d Cir.1988), and *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.1986), in support of its request. However, as the bankruptcy court correctly noted, *MacArthur* and *In re Johns–Manville* involved insurers who voluntarily agreed to contribute lump-sum payments to the trust and involved only the bankruptcy court's power to approve the settlement, to enjoin suits against the insurers, and to allow the claimants to assert their claims against the proceeds of the debtor's settlement. The rationale of these cases therefore do not apply to the present case.

In *Piccinin*, the fourth circuit held that the bankruptcy court had the power to enjoin suits against the insurers of the debtor on the grounds that the debtor would be irreparably harmed because suits against the insurers, if successful, would reduce the insurance funds available to the debtor and thereby "affect the property of the debtor to the detriment of debtor's creditors as a whole...." 788 F.2d at 995. Debtor cites this case as support for its contention that insurance funds are property under the bankruptcy code and are subject to the equitable powers of the bankruptcy court. This court finds that *Piccinin* dealt only with the automatic stay provisions of the bankruptcy code which are invoked to temporarily protect the debtor from an "uncontrolled scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." 788 F.2d at 998. Although the court interpreted the meaning of the term "property" as used in § 541, it did so in order to apply the automatic stay provisions of the bankruptcy code to protect the debtor's assets in the form of insurance coverage. The court did not deal with the turnover of property to the estate as provided for in § 542. *See also In re Titan Energy, Inc.*, 837 F.2d 325, 328–29 (8th Cir.1988).

Despite the fourth circuit's interpretation of "property" under § 541, this court does not find that assets which are to be protected under the automatic stay provisions are necessarily required to be turned over to the estate. This court declines to follow the reasoning of *Piccinin* as applied to the present case. The reasoning and cases cited by the bankruptcy court, as recited above, persuade this court that the bankruptcy court was correct in its interpretation of the law and in its decision.

The debtor also makes several policy arguments. It first argues that asbestos claimants will be treated differently if lump-sum payment is not made because claimants who do not fall within the policy periods will have a smaller fund to collect from—only the $4.4 million assets of the company. The debtor argues that a fund with no policy triggering requirements or

defenses would be more fair to all claimants, giving everyone an equal shot at the total available assets and not allowing those who come first to exhaust the funds, as is the goal of the bankruptcy code. Moreover, it would reduce the transaction costs of case by case litigation and would avoid the extensive litigation over coverage issues. Although these arguments have some merit as a practical matter, and would therefore strongly suggest that a settlement would be the best for all parties, it does not change the legal powers of the bankruptcy court or the legal entitlement of the debtor.

Finally, debtor argues that the "triple-trigger" of coverage adopted in this circuit, together with the Tillinghast Report which estimates claims against Amatex far in excess of both its net worth and its insurance coverage, indicate that there is little doubt that the insurance coverage will be completely exhausted. These estimates and the theory of coverage are not relevant. The estimates represent only the *possibility* that the policies would be triggered. As the insurers point out, there has been no estimate as to whether any of the insurance coverage under the various policies would be triggered by the pending or future asbestos claims. This court finds that, despite the likelihood that the policies would be triggered, and even the high probability that the policies would be exhausted, the debtor has no property interest in the insurance until the debtor is legally obligated to pay damages which fall under the definitions contained in the policies.

For the above-stated reasons, the bankruptcy court's order of March 10, 1989 is affirmed. An appropriate order follows.

### ORDER

AND NOW, this 21st day of July, 1989, it is hereby ORDERED that the bankruptcy court's order of March 10, 1989 dismissing the complaints in the above-captioned cases is AFFIRMED.