**In re B. COHEN & SONS CATERERS, INC., Debtor.**

**Bankruptcy No. 87–04917S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 25, 1992.

Paul Breen, Philadelphia, Pa., for debtor.

Joseph S. Grossman, Philadelphia, Pa., for claimant Yetta Marino.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, Pa.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The motions presently before this court in the above-captioned bankruptcy case require consideration of the circumstances in which a Chapter 11 post-confirmation distribution can be undone. While we believe that such a distribution can be reordered in certain circumstances, we also believe that these circumstances should be limited to extraordinary situations, particularly where the party requesting a re-distribution has been vigilant and the party receiving the distribution is the beneficiary of a windfall due to an error or fraud on the part of the debtor or the recipient.

Because we find that YETTA MARINO ("the Claimant") was not vigilant in protecting her rights and that neither B. COHEN & SONS CATERERS, INC. ("the Debtor") nor the recipients of the Debtor's distributions made any errors or committed any fraud, we conclude that the distribution in the instant case must stand. We will therefore grant the Debtor's motion requesting that we enter a final decree in this case ("the Debtor's Motion") and deny the Claimant's Motion to Compel Payment of Administrative Claim and/or For Disallowance of Unsecured Claims of Insider Creditors and Disgorgement of Insider Distributions ("the Claimant's Motion").

## B. HISTORY OF THE CASE

This modest Chapter 11 case has had an interesting history since its filing on September 30, 1987. The principal event in its early stages was an adversary proceeding filed by the Debtor, a caterer which did business from a rented facility until June 30, 1988, seeking damages against its landlord for allegedly violating the automatic stay and selling and destroying valuable artifacts and other assets in the Debtor's establishment in attempting to regain possession of the leasehold. A history of the case to the date of that decision, March 24, 1989, is included in an Opinion reported at 97 B.R. 808, 809–13 (Bankr.E.D.Pa.) ("*Cohen I*"), *aff'd in part & remanded in part*, 108 B.R. 482 (E.D.Pa.1989) ("*Cohen II*"), *appeal dismissed*, 908 F.2d 961 (3rd Cir.1990), *clarified on remand*, 1990 WL 2632 (Bankr.E.D.Pa. January 11, 1990), *aff'd*, 1991 WL 17874 (E.D.Pa. February 13, 1991), *aff'd*, 944 F.2d 896 (3rd Cir.1991), which awarded the Debtor compensatory damages of $50,000 and punitive damages of $10,000 against the landlord, and barred the landlord from filing any claim for rents.

On January 23, 1990, we also confirmed the Debtor's initial Plan of Reorganization, which contemplated, *inter alia*, continuation of an off-premises catering business by the Debtor. The confirmation order was affirmed in a decision of the district court of February 13, 1991, reported at 124 B.R. 642 ("*Cohen III*"). The Claimant did not vote on the initial Plan and did not participate in this confirmation process.

As the result of a status hearing on December 18, 1991, to determine whether a Final Decree could be entered and this case could be closed after the Court of Appeals' final Order, the Debtor proceeded to file a Modified Plan of Reorganization ("the Plan"), which contemplated complete liquidation of the Debtor's assets in light of the death of its principal, Alexander Cohen, on September 10, 1991. The Disclosure Statement was approved without objection and a confirmation hearing on the Plan was scheduled on April 22, 1992. Ballots were required to be cast and objections to confirmation were required to be filed by April 10, 1992.

It was during the process of consideration of confirmation of the Plan that the existence of the Claimant first became known to this court. The Claimant asserts that she was injured in the Debtor's premises on December 2, 1987, and that the Debtor was uninsured. In 1988, the Claimant attempted to bring suit against the Debtor, but learned of, and was prevented from proceeding by, the automatic stay arising from this bankruptcy case. In spring, 1988, she filed an administrative proof of claim in an amount "in excess of $25,000." Her counsel alleges that she had no specific notice of the proceedings in this case (and, apparently, made no inquiries and therefore did not participate in it) until she received the Disclosure Statement accompanying the Plan on January 30, 1992. The Plan contemplated paying administrative claims in full "on the effective date of the plan or thirty (30) days after a final nonappealable order is entered by the Bankruptcy Court allowing such claim of application whichever is later." [1]

The Debtor filed an objection to the Claimant's filed proof of claim ("the Objec-

---

1. The effective date of the plan was tautologically defined as thirty (30) days after confirmation of the Plan becomes final and nonappealable.

tion") on February 14, 1992. A hearing on the Objection was scheduled on April 1, 1992. The principal issue argued by the parties was whether the claim was entitled to administrative status. In a brief Memorandum of April 10, 1992, reported at 1992 WL 77753, this court held that the claim was not entitled to administrative status, sustained the Objection, and struck the claim.

On April 20, 1992, the Claimant appealed to the district court from the Order of April 10, 1992, disputing the determination that her claim was not entitled to administrative status, and she also filed a motion to stay the entry of the confirmation Order pending that appeal in this court. The Claimant appeared, but did not file an Objection to confirmation, at the confirmation hearing on April 22, 1992. The Claimant again did not vote on the Plan and sufficient votes to achieve confirmation were cast. After orally indicating our intention to do so at that hearing, we entered an Order denying the motion for a stay pending appeal, indicating that the Claimant's not having filed a timely objection to confirmation raised an issue regarding her standing to stay the confirmation order. However, recognizing the potential significance of the entry of an order of confirmation, we stated that we would wait until at least April 29, 1992, to enter an confirmation order, in order to give the Claimant an opportunity to take any other appropriate action to attempt to prevent the Plan from becoming effective. Having received no further advice from any party of any actions by the district court as of May 1, 1992, we entered an Order confirming the Plan on that date.

On May 13, 1992, the district court entered an Order denying the Claimant's motion before that court for a stay of the confirmation order on the ground that her allegations of the grounds for same, *see, e.g., Republic of Philippines v. Westinghouse Electric Corp.,* 949 F.2d 653, 658 (3rd Cir.1991), were insufficient. No appeals from that Order or from our entry of the confirmation Order were taken. Distribution pursuant to the terms of the Plan, which did not include a payment to the Claimant, took place, presumably in early June, 1992. The Debtor decided not to participate in the appeal to the district court, believing that the issue raised in the appeal had been rendered moot by the distribution. However, no motion to dismiss the appeal on the ground of mootness was presented to the district court.

On July 8, 1992, the district court entered a Memorandum and Final Judgment, reported at 143 B.R. 27 (*"Cohen IV"*), sustaining the Claimant's appeal on the merits and vacating our Order of April 10, 1992. That decision expressly held that the Claimant's proof of claim was entitled to administrative status, *id.* at 28–30, and it directed this court, on remand, to

conduct appropriate proceedings to determine the amount of this administrative claim. The Court is aware that a plan has been confirmed in this case. That plan most likely provides for treatment of administrative claims of which this is one, and, therefore, there should be no need to modify the plan.

*Id.* at 30. *Cohen IV* does not address the issue of the effect of that decision on the consummation of the Plan, but appears to assume that it had not been consummated.

The first response of the Claimant to this decision was to file a motion for relief from the automatic stay in this court for permission to liquidate her claim in the state court, where an action had apparently been pending since 1988. We granted this motion on August 12, 1992, concluding that (1) it was doubtful whether the automatic stay applied to this post-petition claim. *See In re M. Frenville Co.,* 744 F.2d 332, 337 (3rd Cir.1984), *cert. denied sub nom. M. Frenville Co. v. Avellino & Bienes,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985); (2) the automatic stay may have expired. *See* 11 U.S.C. § 362(c)(1); and (3) despite the district court's mandate, there appeared to be a statutory impediment to this court's trying and fixing the claim. *See* 11 U.S.C. § 157(b)(5). The Claimant advises us that, on October 2, 1992, the state court assessed damages of $32,181.49 in an uncontested proceeding, and that the Debtor has recently moved to strike or open this judgment.

On September 1, 1992, having received the district court record after the decision in *Cohen IV*, we scheduled a status hearing of September 16, 1992, to consider what order this court should enter upon the remand, and on the status of this case generally. On September 16, 1992, the Claimant's Motion presently before us was filed. At the request of the Claimant, we directed the Debtor to provide details to her and the court regarding the recipients of the distribution, prior to a continued hearing on the outstanding matters on October 14, 1992. On September 28, 1992, the Debtor filed (1) a motion to dismiss the Claimant's Motion on the ground of mootness; (2) an Answer to the Claimant's Motion, which provided the data regarding the Plan distribution; and (3) the Debtor's Motion before us. On October 14, 1992, the parties requested a continuance of all of these matters to November 18, 1992, to attempt to reach an amicable resolution. Shortly before that date, the parties submitted Memoranda of Law, and they indicated their inability to reach a settlement on November 18, 1992.

The data regarding distribution under the Plan submitted by the Debtor indicates the following:

DISTRIBUTION OF FUNDS OF B. COHEN & SONS CATERERS, INC., PURSUANT TO CONFIRMATION OF DEBTOR'S PLAN DATED MAY 5 [sic], 1992

| | |
|---|---|
| Amount Available for Distribution | $83,380.07 |

Administrative Claims:

| | |
|---|---|
| Bell of Pennsylvania | 1,575.43 |
| Internal Revenue Service | 16,565.76 |
| Pepper, Gordon & Breen, P.C. | 3,175.00 |
| Commonwealth of Pennsylvania | 1,032.76 |

Priority Claims:

| | |
|---|---|
| IRS | $22,478.10 |
| Helen Cohen | 2,000.00 |
| Andrew Cohen | 2,000.00 |
| Penna. Department of Labor & Industry | 7,785.77 |
| Total Administrative & Priority Claims | 56,612.82 |
| Balance Available for General Creditors | 26,767.25 |

Distribution to General Creditors @ 26.304%

| | AMOUNT OF CLAIM | PAID |
|---|---|---|
| Philadelphia Gas Works | $ 1,812.59 | $ 476.72 |
| Bell of Pennsylvania | 911.09 | 239.65 |
| City of Philadelphia | 2,727.33 | 454.36 |
| Hotel and Restaurant Employees and Bartenders Union | 4,757.59 | 1,251.44 |
| Helen Cohen | 50,000.00 | 13,152.00 |
| Herbert Goldstein | 16,000.00 | 4,208.64 |
| Leon Bookman | 750.00 | 197.28 |
| Andrew Lee Cohen | 8,800.00 | 2,314.75 |
| Helen Cohen | 10,000.00 | 2,631.13 |
| Cadillac Linens | 2,000.00 | 00.0 * |
| Tartan Food Products | 1,800.00 | 473.47 |
| Otieri Bakery | 1,500.00 | 394.56 |
| Villoti Marinelli Bread | 900.00 | 236.74 |
| Ferndale Frozen Foods | 600.00 | 0.00 * |
| | $101,758.37 | $26,034.74 |
| Balance remaining in debtor's possession | | 736.51 |

* Creditor could not be located.

## C. DISCUSSION

■ The Claimant notes that a total of $26,306.52 (a little less than her present liquidated administrative claim of $32,181.49) was distributed to three "insider-creditors," Helen Cohen, Andrew Lee Cohen, and Herbert Goldstein. She suggests that we can, even at this juncture, utilize our perceived very broad equitable powers to require these three claimants (only) to disgorge the funds distributed to them. Two Chapter 7 cases in which consummated distributions were undone are cited, *In re Crotts*, 87 B.R. 418 (Bankr.E.D.Va.1988); and *In re Kelderman*, 75 B.R. 69 (Bankr. S.D.Iowa 1987), in support of such relief.

The Debtor, meanwhile, focuses our attention upon several decisions of the Third Circuit Court of Appeals, *In re Highway Truck Drivers & Helpers Local Union #107*, 888 F.2d 293, 297–98 (3rd Cir.1989); and *In re Cantwell*, 639 F.2d 1050, 1054 (3rd Cir.1981), and those of other Courts of Appeals, *e.g.*, *In re Club Associates*, 956 F.2d 1065, 1069–71 (11th Cir.1992); *In re Block Shim Development Co.-Irving*, 939 F.2d 289, 291 (5th Cir.1991); *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 841 F.2d 92, 95–96 (4th Cir.1988); *Miami Center Ltd. Partnership v. Bank of New York*, 838 F.2d 1547, 1554–57 (11th Cir. 1988); and *In re Roberts Farms, Inc.*, 652 F.2d 793 (9th Cir.1981), which emphasize that certain developments in reorganization cases which are not stayed, such as distributions pursuant to Chapter 11 plans of reorganization, render disputes regarding claims and distributions under such plans moot.

We have some difficulty accepting the principle asserted by the Claimant that this court has broad powers to act in any manner, even to undo its own confirmation orders, solely on the ground of "doing equity." Often, parties (but not this claimant, who cites no authority) invoke 11 U.S.C. § 105(a), which authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," to

support this principle. However, as to the proper scope of § 105(a), and, we believe, of whatever other equitable powers a bankruptcy court might have, the Third Circuit Court of Appeals has held, in *In re Morristown & E.R.R.*, 885 F.2d 98, 100 (3rd Cir. 1989), that

[s]ection 105(a) authorizes the bankruptcy court, or the district court sitting in bankruptcy, to fashion such orders as are required to further the substantive provisions of the Code. Section 105(a) gives the court general equitable powers, but only insofar as those powers are applied in a manner consistent with the Code. *See* Lawrence P. King, COLLIER ON BANKRUPTCY, ¶ 105.04 at 105–15 & n. 5 (15th Ed.1989). Nor does section 105(a) give the court the power to create substantive rights that would otherwise be unavailable under the Code. *See Southern Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3rd Cir.1985) (holding that a bankruptcy court does not have the authority under § 105 to create a lien to secure payment of environmental cleanup costs when the contract obligating the debtor to pay such costs did not provide for such a lien).

*Accord, Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code").

Thus, this court, in *In re Amatex Corp.*, 97 B.R. 220, 225 (Bankr.E.D.Pa.), *aff'd sub nom. Amatex Corp. v. Stonewall Ins. Co.*, 102 B.R. 411 (E.D.Pa.1989), has held that

§ 105(a) cannot be utilized "as a justification for our proceeding to take otherwise doubtfully authorized judicial actions" *In re Telephonics, Inc.*, 85 B.R. 312, 318 (Bankr.E.D.Pa.1988), or " 'as a loose cannon ... to support otherwise insupportable claims.' " *In re University Medical Center*, 82 B.R. 754, 758 (Bankr.E.D.Pa. 1988) (quoting *In re Latimer*, 82 B.R. 354, 364 (Bankr.E.D.Pa.1988)).

We would note that § 105(a) has traditionally been successfully invoked in only a

few narrow categories of cases, most notably (1) attempts to extend the scope of § 362(a) slightly beyond its normal contours. *See, e.g., In re Wedgewood Realty Group, Ltd.,* 878 F.2d 693, 699–702 (3rd Cir.1989); *In re Monroe Well Service, Inc.,* 67 B.R. 746, 750–53 (Bankr.E.D.Pa.1986); and *In re Metro Transportation Co.,* 64 B.R. 968, 973–75 (Bankr.E.D.Pa.1986); and (2) actions necessary to preserve the integrity of the bankruptcy court itself. *See, e.g., In re Clark,* 91 B.R. 324, 332–34 (Bankr.E.D.Pa.1988) (contempt power); and *In re Daily Corp.,* 72 B.R. 489, 492 (Bankr. E.D.Pa.1987) (power to administer cases). *See generally* 2 COLLIER ON BANKRUPTCY, ¶¶ 105.02 to 105.07, at 105–5 to 105–31 (15th ed. 1991).

Secondly, it must be recalled that the Claimant is requesting that we undo the enforcement of this court's confirmation Order of May 1, 1992. The particular finality of the terms of confirmed bankruptcy plans is emphasized in *In re Szostek,* 886 F.2d 1405, 1408–10 (3rd Cir.1989), and cases cited therein. Also, we note that 11 U.S.C. § 1144 contains a jurisdictional time-bar of a period of 180 days after confirmation in which a confirmation order can be revoked, and then only for fraud. *See In re TM Carlton House Partners, Ltd.,* 110 B.R. 185, 188 (Bankr.E.D.Pa.1990). It is now more than 180 days since confirmation of the Plan, and no attempt to revoke the confirmation Order has been made.

Thirdly, it must be recalled that the Claimant did not file any objection to confirmation of the plan in this court by the prescribed date of April 10, 1992, as required by our Order of March 4, 1992, despite her admitted notice of the process seeking to confirm the Plan. Nor has she filed any appeal from the confirmation order. As *Cohen III, supra,* notes,

> "[i]t is well established that 'if no objection to the plan is filed after proper notice of the case, the creditor is bound by the terms of the plan and has no right to later contest the propriety of the plan.'" *In re Waldman,* 88 B.R. 59, 61 (E.D.Pa. 1988) (quoting 5 COLLIER ON BANKRUPTCY ¶ 1324.01 at 1324–5); *Butler Consumer Discount Co. v. Cain (In re Butler Consumer Discount Co.),* 50 B.R. 388, 390 (W.D.Pa.1985) (citing *In re Gilchrist Co.,* 410 F.Supp. 1070 (E.D.Pa. 1976)).

The instant Claimant is effectively requesting us to revoke a confirmation Order despite the fact that no attack on that order *per se* was made within the now-expired 180–day post-confirmation period and in the absence of any claim of fraud. Such relief appears to be beyond the realm of § 105(a), the Bankruptcy Code, or any rule of law which requires that court orders must generally be deemed final in the absence of appeal.

■ Furthermore, the Claimant's specific attacks upon the claims filed by, and paid to, the Debtor's insiders, while they have a surface equitable appeal, do not withstand close analysis. Insiders clearly can be legitimate creditors of corporate debtors. Insiders' claims, like those filed by any other creditor, are presumed valid if not challenged by objections. *See* 11 U.S.C. § 502(a); Federal Rule of Bankruptcy Procedure 3001(f); and *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173 (3rd Cir.1992). The claims of Helen Cohen, Andrew Lee Cohen, and Herbert Goldstein, among other claims, were never challenged by any objection. Therefore, they must be deemed valid and allowed as such.

The Claimant appears to question the Debtor's motivations for not challenging these claims, suggesting that the insiders controlled the Debtor and could hardly have been expected to challenge their "own" claims. Such reasoning overlooks the fact that a debtor-in-possession ("DIP"), its officers, and its appointed counsel are fiduciaries for all of the DIP's creditors. *See In re Crouse Group, Inc.,* 75 B.R. 553, 557–58 (Bankr.E.D.Pa.1987).

If a DIP and its officers and agents are perceived to have breached their fiduciary duties, creditors are not without remedies. They can seek the appointment of an independent trustee or examiner in the case. *See* 11 U.S.C. § 1104(a). If such drastic action is not deemed appropriate in light of, *e.g.,* an isolated instance of favoritism to

certain creditors, we note that creditors have been held to have standing to intervene or raise additional claims in actions brought by debtors and commence proceedings on behalf of debtors, which are colorably meritorious and the debtor refused to assert. *See In re Martin*, 124 B.R. 69, 72 (N.D.Ill.1991); *In re Nicolet, Inc.*, 80 B.R. 733, 737–40 (Bankr.E.D.Pa.1987); and *In re Morrison*, 69 B.R. 586, 589 (Bankr.E.D.Pa. 1987). Another remedy available to creditors is to seek to have certain claims, such as those of insiders, subordinated to other claims. *See* 11 U.S.C. § 510(c); and *In re Comtec Industries, Inc.*, 91 B.R. 344, 346–49 (Bankr.E.D.Pa.1988).

The Claimant here sought to avail herself of none of these remedies. Despite the unusually long delay in the administration of this case effected by the litigation between the Debtor and its former landlord, and the Claimant's knowledge of the existence of the case since spring, 1988, the Claimant made no allegations concerning the impropriety of the claims of the Debtor's alleged insiders until *after* the confirmation Order had been entered and the Plan was consummated by distribution. We conclude that it is too late for the Claimant to effectively seek to have co-creditors' claims disallowed or subordinated at this juncture.

While we therefore have considerable difficulties in accepting the arguments of the Claimant, we also have difficulty accepting the "absolutist" position regarding the effect of confirmation upon mootness of any issues involving confirmation of a plan advanced by the Debtor. As the *Crotts* and *Kelderman* cases cited by the Claimant indicate, there are times and places where distributions can be undone.

In *Crotts*, a creditor had worked out a settlement of its claim with the debtor and the trustee which contemplated a distribution to the creditor. 87 B.R. at 419. However, no distribution was in fact made to that creditor. *Id.* The only defense of the trustee to this lapse appears to have been the creditor's laches in asserting his claim (a period of no more than one or two

months), not a denial of the validity or existence of the agreement. *Id.* at 421.

In *Kelderman*, the creditor's file-stamped proof of claim went unpaid because it was apparently lost or misfiled by the court clerk's office. 75 B.R. at 69, 70. The court reiterated the complete lack of fault of the creditor in this process, and it consequently ordered a re-distribution of the funds. *Id.* at 70, 71.

It would not take great imagination to envision other extraordinary circumstances in which confirmation orders could not be enforced. *See In re Rideout*, 86 B.R. 523, 526 (Bankr.N.D.Ohio 1988) (debtor admittedly neglected to mail notice of confirmation hearing, disclosure statement, or ballots to any creditors).

■ Several of the authorities cited by the Debtor suggest that because a plan has been consummated does not, in all instances, insulate the confirmation order from every type of attack, although there is a strong tendency to maintain such orders intact. For example, in *Club Associates, supra*, 956 F.2d at 1069 n. 11, the court states as follows:

[t]he mootness inquiry necessarily involves many subsidiary questions: Has a stay pending appeal been obtained? If not, then why not? Has the plan been substantially consummated? If so, what kind of transactions have been consummated? What type of relief does the appellant seek on appeal? What effect would granting relief have on the interests of third parties not before the court? And, would relief affect the re-emergence of the debtor as a revitalized entity? The answers to these questions provide the reviewing court with the backdrop to evaluate the ultimate issue of whether a confirmation has progressed to the point where effective judicial relief is no longer a viable option.

The same court, in *Miami Center, supra*, 838 F.2d at 1555, had earlier suggested different considerations, *e.g.*,

the virtues of finality, the passage of time, whether the plan has been implemented and whether it has been substantially consummated, and whether there

has been a comprehensive change in circumstances. [*In re] AOV [Industries, Inc.,* ] 792 F.2d [1140,] at 1148–49 [ (D.C.Cir.1986) ]. The court will not, however, allow a "piecemeal dismantling" of a reorganization plan. *Id.* at 1149. In *AOV* the court recognized a "strong presumption" of mootness.

We considered a situation factually analogous to the instant matter in *In re Sturm,* 121 B.R. 443 (Bankr.E.D.Pa.1990). There, a claimant in a Chapter 7 case presented evidence that, although no indication of same appeared in the file or on the claims docket, he had filed, and forwarded to the predecessor-trustee a copy of, a proof of claim, a portion of which was allegedly entitled to administrative status. *Id.* at 445. *Compare Kelderman, supra.* Although no bar date for claims had ever been established in the course of administration of that case, 121 B.R. at 446–47, the trustee had effected distribution of all of the debtor's assets before the claimant brought his claim to the attention of the successor-trustee. *Id.* at 444, 445.

The result in *Sturm,* a judgment in favor of the trustee, was driven in part by our observation that the form of the particular action brought, which was a suit seeking to hold the trustee personally liable to the claimant and hence required the Trustee to make duplicate distribution from his own pocket, required a showing of at least negligence on the part of the trustee, which was absent from that record. *Id.* at 448–50. However, our decision also emphasized the significance of the negligence of the claimant in failing to monitor the case and make any objections over an inordinately long period of case administration, *i.e.,* until after distribution was finally made and the case file was closed. *Id.* at 444, 449.

■ We believe that the instant matter represents the sort of unfortunate happening which occasionally occurs in a bankruptcy case, *i.e.,* a claim is recognized as (or at least is held to be) valid only after a distribution has occurred. If the party making distribution, such as a trustee or a debtor's agent or employee, is negligent in overlooking the claim or in making an erroneous distribution, that party or its bonding agent may be liable to the claimant who fails to receive a distribution. *Id.* at 448–50. The remedy sought by the instant Claimant is generally a more palatable remedy than that sought in *Sturm, i.e.,* recoupment of funds allegedly wrongfully paid from the recipients of such funds, rather than an effort to hold a possibly immune court officer responsible for making a duplicate payment. *Compare id.* at 450.

■ There is, however, one flaw in the remedy requested by the Claimant, irrespective of whether the court determines that it can overturn the distribution effected pursuant to the confirmation order or not.. In the Order accompanying her Motion, the Claimant requests, *inter alia,* that the Debtor be ordered to pursue *only* the three alleged insiders to recover funds from them, which collections it is further requested be kept in a reserve fund for the benefit of the Claimant.

We find, however, that the only remedy which could be provided, consistent with the Bankruptcy Code and the Plan, would be to grant the Claimant administrative status and redo the entire distribution on this basis. This would result in a re-distribution scheme which would exhaust all amounts available for distribution in payments to administrative and priority creditors, and result in an elimination of any distribution to any unsecured creditors. *See* page 373 *supra.* Recoupment from all of the unsecured creditors would then have to be undertaken. When this sort of relief is considered, the practicalities which underlie undoing a confirmation order and a distribution scheme become manifested. Before such relief could be granted, notice to all of the creditors would have to be provided. In fact, plan distribution would take such a different posture than that contemplated by the Disclosure Statement given to creditors and the Plan that reballoting of all creditors would appear to be necessary.

The considerations set forth in *Club Associates* and *Miami Center* must be evaluated in this light. Turning first to those articulated in *Club Associates,* page 376

*supra*, we note that no stay pending appeal was obtained by the claimant. To her credit, the Claimant attempted to obtain a stay, from this court and the district court, but was apparently unable to convince either court that she had set forth sufficient allegations to support such relief, although the district court, unlike this court, ultimately ruled in the Claimant's favor on the merits, at least in the face of the one-sided appeal before it. We believe that the Claimant was responsible for not making clear to the district court how the matter could and rather clearly would play out if the stay were denied but she prevailed on appeal, as in fact transpired.

The transactions consummated are significant, as they involve, contrary to the Claimant's attempt to confine the victims of granting her relief to three parties, distributions to approximately twenty (20) creditors, most of which the Claimant admits are not insiders and hence were admittedly innocent of any overreaching. The relief requested would not effect a re-emergence of the Debtor, but it would significantly affect the interests of third persons.

Considering the *Miami Center* factors recited at page 376 *supra:* (1) finality is important, since this case is now quite dated; (2) there has been significant passage of time from the filing of the case to date, in which time the Claimant could have probably proceeded to liquidate her claim in state court, and clearly could have challenged confirmation; (3) the plan is completely consummated at this time; and (4) there has been virtually no change in the relevant parties' circumstances since 1988.

Most of the *Club Associates* and *Miami Center* factors therefore cut against the Claimant. However, we believe that the weighing process must ultimately come down to examining the relative fault of the interested parties in creating the resulting unfortunate situation.

We can find no evidence of wrongdoing or fraud on the part of either the Debtor or the "insider claimants" who are the Claimant's principal target. The Debtor is criticized for expeditiously making distribution to frustrate the Claimant's right of appeal.

However, we refuse to fault the Debtor for proceeding to effect distribution in expeditious fashion. The plan *required* a distribution within thirty (30) days from the entry of a final and nonappealable order of confirmation. The Debtor had a fiduciary duty to its creditors to make the distribution as promptly as possible. The Debtor also had a duty to this court to bring such a dated case to a swift conclusion. The Claimant had failed to prevail on the merits or in obtaining a stay from this court, and in obtaining a stay from the district court. After three strikes, the Debtor was perfectly justified in concluding that the Claimant was out of the distribution scheme, and in treating her accordingly.

The "insider claimants" duly filed their proofs of claims. They were entitled to have them allowed and paid without scrutiny unless an interested party objected to these claims or sought to subordinate them. There is no allegation that these claimants or the Debtor violated any provisions of the Code or committed any act calculated to mislead this court, the district court, the Claimant, or the other creditors as to their intentions and claims of rights.

The only matter concerning which we do fault the Debtor is in "playing dead" in the district court instead of arguing to that court, at least after distribution was made, that the appeal was moot, through the medium of a motion to dismiss the appeal. Had such a motion been successful, *Cohen IV* would never have been filed, and the Final Decree in this case would be history. Even had the Debtor been unsuccessful in raising this issue, it would have preserved the time of this court and all of the interested parties by deciding the issue now before us at an earlier juncture. In the event of an appeal from this Order, the issue will come before the district court anyway, but only after the labors of this court and the parties after remand.

However, by way of contrast, we must fault the Claimant here, like the claimant in *Sturm*, for doing far less than was reasonably necessary to protect her rights in several respects. Bankruptcy cases generally move swiftly, and parties who fail to partic-

ipate or keep current account of developments therein are susceptible to being left behind in the process. In both this case and in *Sturm* the claimants were aided by unusual delays in administration of the respective cases. Nevertheless, both claimants allowed the crucial event of distribution and many of the events leading up to it to arise and be resolved without their participation. It should come as little surprise to such claimants that irrevocable events might occur without their participation.

There are significant steps which the Claimant could have taken, but did not take, to preserve funds which could ultimately be distributed to her. Firstly, she probably could have proceeded to liquidate her claim in state court during the pendency of the appeals involving the Debtor's suit against its former landlord. Litigation of her claim may not have been subject to the automatic stay until it reached the point of payment, as we decided on August 12, 1992, *see* page 372 *supra,* or she may have successfully obtained relief from the stay to litigate it. In that way, she could have established the legitimacy of her claim, leaving open only the issue of whether she had a valid *administrative* claim. It should be recalled that our Order of April 10, 1992, invalidated the Claimant's claim *entirely,* precluding her from participation in distribution as even an unsecured claimant. Our failure to allow any claim to her has, however, not been protested to date at any level. The Claimant has disputed only the classification of her claim as a general unsecured claim rather than an administrative claim.

The Claimant could also clearly have undertaken to challenge the legitimacy of the "insider" claims during the pendency of the appeals in the suit involving the Debtor's landlord. Had this been done, those claims might have in fact been disallowed or subordinated prior to distribution.

Even had the Claimant awakened to the activities in this case for the first time in January, 1992, there was much that could have been done that was not done. The Claimant could have made her presence known and alerted other creditors to her claim's potential impact on payment of their own claims by her objecting to the failure of the Debtor to account for her claim's alleged administrative status in its Disclosure Statement. She could have challenged or sought to subordinate the claims of the "insider claimants" at that time and insisted that confirmation be delayed until these issues were resolved. She could have sought to have the disposition of her claim removed to the district court, pursuant to 11 U.S.C. § 157(b)(5).

More importantly, she could have objected to confirmation of the Plan. Certainly, she had standing to do so. Filing an objection would have given her unquestioned status to appeal any order of confirmation of the Plan to the district court.

The Claimant could perhaps have legitimately filed an appeal from the confirmation order in any event. Had she done so, the date for distribution, under the terms of the Plan, would have been postponed, as the confirmation Order would have no longer been "nonappealable." *See* page 371 & n. 1 *supra.* Furthermore, she might have convinced the district court to overturn the confirmation order on appeal. As it stands now, the only issues which could come before the district court are those decided in this Opinion, arising in a posture less than ideal to the Claimant.

In light of the oversights of the Claimant and the absence of an error or fraud of the Debtor and the "insider claimants" in effectuation of a distribution which excluded the Claimant, we are disinclined to provide the extraordinary relief sought by the Claimant. We will therefore proceed to deny her Motion presently before us. Consequently, will also grant the Debtor's Motion and proceed to enter a Final Decree closing this case if no further timely appeal is forthcoming.

## D. CONCLUSION

An Order consistent with this Opinion will be entered.

### ORDER

AND NOW, this 25th day of November, 1992, upon consideration of the Motion of

Claimant Yetta Marino to Compel Payment and/or for Disallowance of Unsecured Claims of Insider Creditors and Disgorgement of Insider Distributions ("the Claimant's Motion"); the Debtor's Motion for a Final Decree in this case ("the Debtor's Motion"); and determination of what action this court should enter upon remand per the Order of July 8, 1992, 143 B.R. 27, in Civil Action No. 92–2850 (E.D.Pa.), taking into account the Memoranda of Law submitted by the respective interested parties relevant thereto, it is hereby ORDERED AND DECREED as follows:

1. The Claimant's Motion is DENIED.

2. The Debtor's Motion is GRANTED in part. A Final Decree will be entered in this case unless a timely appeal is taken from this Order or upon a final appellate decision affirming this Order.

3. This court will not enter any further Order in reference to the remand of the above appeal from the district court, as we find that the matter of resolution of the Claimant's proof of claim has been rendered moot by the Debtor's distribution of all of its assets.